Dear Ms. Sigler:
Your request for an opinion has been forwarded to me for research and reply.[1] In your request you have expressed concern about the burdening of Calcasieu Parish's local hospital emergency rooms by coroners of neighboring parishes. You have indicated that coroners in neighboring parishes are rather routinely issuing Orders of Protective Custody ("OPC") directing sheriffs' deputies of their respective parishes to transport potential mental health patients to the emergency rooms of Lake Charles' hospitals for evaluation and possible treatment instead of utilizing treatment facilities located in their respective home parishes. Thus far, you have been unable to resolve the following issues, [2] which are quoted verbatim, and now ask our office for legal guidance concerning same. We will respond to your questions in the order presented in your letter to this office. *Page 2 
 I. Pursuant to R.S. 28:53, are surrounding parishes allowed toimmediately transport patients to out-of-parish emergency facilitiesbefore first taking them to their own qualified facilities?
With regard to your first question, we note that the only section of R.S. 28:53 that specifically pertains to OPCs is paragraph (J). R.S. 28:53(J)(1) permits a "credible person of legal age who is financially unable to afford a private physician or who cannot immediately obtain an examination by a physician" to request her parish coroner to perform a medical examination of a potential patient where an OPC may be necessary. The facts presented in your inquiry do not appear to satisfy the criteria set forth in R.S. 28:53(J). Instead, it appears that your inquiry actually stems from R.S. 28:53.2, which authorizes a coroner (or a judge) to order an individual suffering from a mental illness to be placed into protective custody and transported to the coroner's office or a treatment facility for evaluation and possible emergency commitment for treatment purposes under a physician's emergency certificate ("PEC") or a coroner's emergency certificate ("CEC"). R.S. 28:53.2 specifically provides:
 A. Any parish coroner or judge of a court of competent jurisdiction may order a person to be taken into protective custody and transported to a treatment facility or the office of the coroner for immediate examination when a peace officer or other credible person executes a statement under private signature specifying that, to the best of his knowledge and belief, the person is mentally ill or suffering from substance abuse and is in need of immediate treatment to protect the person or others from physical harm.
 * * * * C. The order for custody shall be in writing, in the name of the state of Louisiana, signed by the district judge or parish coroner, and shall state the following:
 (1) The date and hour of issuance and the municipality or parish where issued.
 (2) The name of the person to be taken into custody, or if his name is not known a designation of the person by any name or description by which he can be identified with reasonable certainty.
 (3) A description of the acts or threats which have led to the belief that the person is mentally ill or suffering from substance abuse and is in need of immediate hospitalization to protect the person or others from physical harm, and *Page 3 
 (4) That the person shall be taken to a community mental health center, a public or private general hospital, a public or private mental hospital, coroner's office or detoxification center.
 (5) That law enforcement officers are to use reasonable and necessary precautions when appropriate, in the execution of an order for custody. . . .
 D. The order for custody shall be effective for seventy-two hours from its issuance and shall be delivered to the coroner or director of the treatment facility by the individual who has transported the person. The date and hour that the person is taken into protective custody shall be written on the order. Without delay, and in no event more than twelve hours after being taken into custody, the person shall be examined immediately by the coroner or, if at a treatment facility, by a physician preferably a psychiatrist, medical psychologist or psychiatric mental health nurse practitioner, who shall determine if the person shall be voluntarily admitted, admitted by emergency certificate, admitted as noncontested admission, or discharged. The person in custody shall be examined within twelve hours of his arrival at the treatment facility or the coroner's office or he shall be released.
 * * * * (emphasis added).
As stated in your letter to this office, coroners of various other parishes have issued OPCs directing that potential mental health patients be transported to one of Lake Charles' emergency treatment facilities or emergency rooms where the patients must immediately be examined under the dictates of this provision of the Louisiana Mental Health Law. As you can see, R.S. 28:53.2(A) does allow coroners to issue OPCs directing that a person alleged to be suffering from mental illness or substance abuse, and who presents a danger to herself or others, be taken into protective custody and transported to a treatment facility (or the coroner's office) for examination to determine whether the individual needs to be admitted by PEC or CEC, or discharged, as the case may be. See La.R.S. 28:53.2(D). However, the Louisiana Mental Health Law does not mandate that a person subject to an OPC must be sent to an in-parish emergency treatment facility before she can be sent to an out-of-parish facility. Rather, as a matter of policy, it was the intent "that mental health and substance abuse treatment services be delivered as near to the place of residence of the person receiving such services as is reasonably possible and medically appropriate."See La.R.S. 28:50(4).
While there appears to be no statutory requirement that a coroner immediately utilize her in parish emergency treatment facilities when issuing OPCs, Louisiana jurisprudence has *Page 4 
established that a coroner has only parish-wide jurisdiction in exercising her functions.[3] Likewise, a sheriff and his deputies under ordinary circumstances have authority as law enforcement officers within the territorial limits of their respective parishes.[4]
Therefore, even though we recognize that a coroner may direct persons subject to OPCs, PECs, or CECs to treatment facilities beyond parish boundaries, [5] it seems inherently incongruous for a coroner to implement any policy that routinely and specifically directs the transportation of persons taken into custody under OPCs to only out-of-parish treatment facilities despite adequate treatment facilities being available in her home parish.
Instead, it should only be under exigent or extraordinary circumstances that the coroner considers sending a person subject to an OPC to a treatment facility in another parish, as opposed to utilizing one located in-parish that is equipped to handle the evaluation and possible treatment of the patient. This would be consistent with the expressed legislative intent that the evaluation, commitment, and treatment of a person suffering from mental illness and substance abuse be delivered as near as possible to the patient's place of residence. Along these lines, our office has recognized that when in-parish medical facilities cannot meet the needs of the mental health care patients residing in that parish then coroners may find themselves having to transfer mental health patients to out-of-parish facilities.[6]
Furthermore, although R.S. 28:53.2 does not mandate that a person taken into protective custody under an OPC must be sent first to an in-parish emergency treatment facility before sending her to an out-of-parish facility, we observe that time is a critical factor when an OPC has been issued, because the subject patient must be evaluated by the coroner at her office, or by a physician at a treatment facility within 12 hours after being taken into custody.[7] Due to the inherent time constraints associated with OPCs, our office points out that, depending upon the distance between a particular treatment facility and the patient's place of apprehension, it may be in the best interest of all concerned, including those coroners and citizens of parishes neighboring Calcasieu Parish, to direct that any individual subject to an OPC, who resides outside of Calcasieu Parish, be taken to a treatment facility in her home parish, rather than one located in Lake Charles in Calcasieu Parish. *Page 5 
Based upon the foregoing analysis, our office's response to your first inquiry is that the Louisiana Mental Health Law, in particular R.S. 28:53.2, does not require coroners to first transport persons subject to OPCs to in-parish treatment facilities, as opposed to such facilities out-of-parish. However, as a matter of sound policy, the time constraints associated with OPCs, and the legislature's declaration of policy that mental health and substance abuse treatment be delivered as near to the individual's place of residence as feasibly possible, it would also be our office's policy recommendation that coroners should consider directing that such individuals be taken to treatment facilities located within their respective home parishes, and that only under exigent or extraordinary circumstances (e.g., no available beds in the home parish of the patient) should the coroners direct that these individuals be transported to out-of-parish treatment facilities.
II. Is there any provision of law that mandates a coroner to sendOPC patients domiciled in his parish to a local facility?
In response to your second question, we submit that the foregoing analysis of R.S. 28:53.2 would also apply with the same conclusion. R.S. 28:53.2 simply does not require a coroner to send an OPC patient domiciled within her parish only to a treatment facility located within her home parish.
We have also reviewed federal law for other potential restrictions on a coroner's authority when issuing OPCs, and it appears to this office that neither the Health Insurance Portability and Accountability Act of 1996 (HIPAA), PL 104-191, nor the Emergency Medical Treatment and Active Labor Act of 1986 (EMTALA), 42 U.S.C. § 1395dd, mandate that a coroner must send mental patients domiciled within her parish and subject to an OPC only to a treatment facility in her home parish, as opposed to an out-of-parish facility.
The primary purpose of HIPAA is to maintain the privacy of personal health care information in the electronic age.[8] We could find no provision in HIPAA that would mandate where coroners must send mental patients. EMTALA is more specific, and affords no additional guidance here.
According to EMTALA, when a hospital has an emergency medical department "if any individual . . . comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, then the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency *Page 6 
department, to determine whether or not an emergency medical condition . . . exists."[9] EMTALA was enacted to "address a distinct and narrow problem — the `dumping' of uninsured, underinsured, or indigent patients by hospitals who did not want to treat them."[10] "A patient is `dumped' when he or she is shunted off by one hospital to another, the second one being, for example, a so-called charity institution"[11]. EMTALA, however, does not offer any additional guidance on the issue at hand.[12]
After considering the state and federal laws discussed above, our office's response to your second inquiry is that the Louisiana Mental Health Law, HIPPA, and EMTALA do not mandate that a coroner must send OPC patients domiciled within her parish to a local treatment facility located in her parish, as opposed to an out-of-parish treatment facility.
III. Pursuant to R.S. 28:53G(6), which states the examining coronershall be entitled to a fee:
 (a) Does the receiving medical facility giving the initial patient care have any recourse against the parish of the patient's domicile for services rendered?
 (b) If not, does the Calcasieu Parish Coroner have the authority to collect on behalf of the Lake Charles emergency facilities?
The Louisiana Mental Health Law, with respect to the costs incurred in effecting the OPC, PEC, and CEC procedures, provides:
 If financially able, the patient or his legally responsible relative shall pay the costs of commitment, including examination fees, . . . otherwise the parish of domicile in the case of a resident or the division in the case of a non-resident shall pay these costs. *Page 7 
 Fees for services rendered by coroners or other experts in the commitment of patients shall be in accordance with the provisions contained in Article 267 of the Code of Criminal Procedure and the special laws relating to the fees of coroners and assisting physicians in interdiction proceedings. Except for emergency commitments which do not result in court commitment and voluntary admissions, the coroner of the parish of domicile shall receive the usual fee allowed in a formal commitment, for all types of commitment under this Chapter, even though he does not act personally in the commitment proceeding.
La.R.S. 28:141.
We are of the opinion that R.S. 28:141 provides a mechanism for reimbursement to treatment facilities of the costs of commitment, including examination fees, for all types of commitment available under the Louisiana Mental Health Law, including examinations made pursuant to the OPC procedure of R.S. 28:53.2 and subsequent or independent PEC and CEC procedures.[13] This would mean in your scenario that the receiving medical facility would be entitled to recover its fees and costs for its initial and any subsequent examinations and treatment performed under the OPC procedures. As set forth in R.S. 28:141, these costs and fees may either be the responsibility of the patient (or a legally responsible relative or insurer), or the parish of the patient's domicile in cases of patient indigence or inability to pay.
In response to your final inquiry, we could find no authority for a coroner to take any action to collect any fees or costs of these examinations or treatments under the Louisiana Mental Health Law on behalf of hospitals or treatment facilities.
In conclusion, we reiterate that it is the opinion of this office that R.S. 28:53.2 does not require coroners to first direct the transportation of potential mental patients subject to OPCs to in-parish emergency treatment facilities for examination and/or treatment before directing them to out-of-parish treatment facilities. There is also no requirement that such patients be transported only to in-parish facilities. Federal law, including HIPAA and EMTALA, likewise does not have any such mandates for coroners engaging in OPC procedures. However, as a matter of sound policy and due to the inherent time constraints associated with the OPC process, it would be the recommendation of this office for coroners to direct that individuals subject to OPCs are to be transported to treatment facilities in their home parish and that only under exigent or extraordinary circumstances (e.g., lack of available beds at in-parish treatment facilities) should these individuals be sent to out-of-parish treatment facilities. A treatment facility called upon under the Louisiana Mental Health Law to examine and/or treat a patient under an OPC, a PEC, or a CEC procedure is entitled to recover fees and costs associated with such examinations and treatment from either the patient (or a responsible *Page 8 
relative or insurer) or the parish in which the patient is a domiciliary (in the event of indigence or inability of the patient to pay).
We hope that this information sufficiently answers your inquires. If we can be of further assistance, please do not hesitate to contact us.
 Very truly yours,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 BY: __________________________
 KATHERINE K. GREEN
 Assistant Attorney General
 JDC:KKG:jv
[1] It should be noted that our office contacted the requestor seeking clarification of the original opinion request (OR 10-0062). This opinion is submitted based upon the additional information provided in the current request.
[2] Prior to submitting this request, your office reviewed La. Atty. Gen. Op. Nos. 85-253, 94-119, and 96-383 for guidance. It should be noted that these opinions specifically interpret R.S. 28:53 in relation to an individual who has been admitted to a treatment facility pursuant to a physician's or coroner's emergency certificate (PEC or CEC). However, the issue in the pending request relates to the interpretation of R.S. 28:53.2, which authorizes coroners to issue orders for protective custody ("OPC") to apprehend an individual and bring her to the coroner's office or a treatment facility for a mental examination.
[3] Mullins v. State, 387 So.2d 1151, 1152 (La. 1980);Regions Bank v. Parish ofCaddo, 42,920 (La.App. 2 Cir. 2/27/08), 978 So.2d 494, 498 (citingMullins).
[4] La.Const. art. V, Section 27 (1974); Hayes v. Parkem Indus.Services Inc.,598 So.2d 1194, at 1197 (La.App. 3 Cir. 4/16/92)("although the sheriff is constitutionally and statutorily the chief law enforcement officer of his parish, his jurisdiction is limited to the territorial boundaries of his parish . . . A deputy's jurisdiction is limited to the territorial limits of the parish where he is employed.").
[5] See La. Atty. Gen. Op. Nos. 96-362, 84-775.
[6] See La. Atty. Gen. Op. 81-660.
[7] La.R.S. 28:53.2(D). "The person in custody shall be examined within twelve hours of his arrival at the treatment facility or coroner's office or he shall be released."
[8] Tobi M. Murphy, Comment, Enforcement of the HIPAA Privacy Rule:Moving From Illusory Voluntary Compliance to Continuous ComplianceThrough Private Accreditation (Comment), 54 Loy. L. Rev. 155 (2008). HIPAA also impacted other areas of health care. For instance, HIPAA amended ERISA to limit the use of preexisting conditions by insurance providers. Anniek de Ruitjer, The Business of Health Care in theUnited States: What is Wrong with the Standard of EconomicEfficiency? 10 Loy. J.Pub. Int. L. 87, at n. 33 (2008).
[9] 42 U.S.C. § 1395dd(a); Guzman v. Memorial Hermann HospitalSystem, 637 F.Supp.2d 464, 478 (S.D.Tx. 2009) (internal citations omitted).
[10] Summers v. Baptist Medical Center Arkadelphia,91 F.3d 1132, 1136 (8th Cir. 1996).
[11] Guzman v. Memorial Hermann Hospital System,637 F.Supp.2d 464, 478 (S.D.Tx. 2009) (citing Summers v. BaptistMedical Center Arkadelphia, 91 F.3d 1132, 1136 (8th
Cir. 1996)) (emphasis added). The United States Court of Appeals for the Fifth Circuit in its opinion Marshall on Behalf of Marshall v. EastCarroll Parish Hosp. Service Dist., 134 F.3d 319 (5th
Cir. 1998), also relied on Summers.
[12] EMTALA should be taken into consideration by hospitals as a reason to provide emergency treatment to an individual presented per OPC regardless of the potential mental health patient's ability to pay for examination. Medical Emergency Condition means a patient with acute symptoms of sufficient severity (including severe pain) that in the absence of immediate medical attention could reasonably be expected to result in placing the individual's health in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part. 42 U.S.C. § 1395dd(e)(1).
[13] See La. Atty. Gen. Op. 05-0220.